UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERALD JOSEPH LOVOI,<br><br>                    Plaintiff,<br><br>         v.<br><br>HOLLYFRONTIER CORPORATION, MICHAEL C. JENNINGS, FRANKLIN MYERS, ANNE-MARIE N. AINSWORTH, ANNA C. CATALANO, LELDON E. ECHOLS, MANUEL J. FERNANDEZ, R. CRAIG KNOCKE, ROBERT J. KOSTELNIK, JAMES H. LEE, and MICHAEL E. ROSE,<br><br>                    Defendants, | Civil Action No. _____<br><br><br>COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934<br><br><br><br>JURY TRIAL DEMAND |

Plaintiff Gerald Joseph Lovoi ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against HollyFrontier Corporation ("HollyFrontier" or the "Company") and HollyFrontier's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to acquire Sinclair Oil Corporation from The Sinclair Companies ("Sinclair").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on September 17, 2021. The Proxy recommends that HollyFrontier stockholders vote in favor of issuing 60.2 million shares of

1

common stock in HF Sinclair Corporation (the "Stock Issuance"), which will be the new parent company of HollyFrontier after the Company acquires Sinclair (the "Proposed Transaction"). The Proposed Transaction was first disclosed on August 3, 2021, when HollyFrontier and Sinclair announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which HollyFrontier will acquire Sinclair for $1.8 billion, consisting of 60.2 million shares in HF Sinclair Corporation (the "Merger Consideration").

3. The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections prepared by HollyFrontier management, as well as the financial analyses conducted by Citigroup Global Markets Inc. ("Citigroup"), HollyFrontier's financial advisor.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Stock Issuance and/or the Proposed Transaction, including filing a definitive proxy statement ("Definitive Proxy") with the SEC or otherwise causing a Definitive Proxy to be disseminated to HollyFrontier's stockholders, unless and until the material information discussed below is included in the Definitive Proxy or otherwise disseminated to HollyFrontier's stockholders. In the event the Stock Issuance and/or the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of HollyFrontier.

6. Defendant HollyFrontier is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 2828 N. Harwood, Suite 1300, Dallas, Texas 75201. HollyFrontier common stock trades on NYSE under the ticker symbol "HFC."

7. Defendant Michael C. Jennings has been President, CEO, and a director of the Company since 2011.

8. Defendant Franklin Myers has been a director of the Company since 2011. Defendant Myers serves as Chairman of the Board.

9. Defendant Anne-Marie N. Ainsworth has been a director of the Company since 2017.

10. Defendant Anna C. Catalano has been a director of the Company since 2017.

11. Defendant Leldon E. Echols has been a director of the Company since 2009.

12. Defendant Manuel J. Fernandez has been a director of the Company since 2020.

13. Defendant R. Craig Knocke has been a director of the Company since 2019.

14. Defendant Robert J. Kostelnik has been a director of the Company since 2011.

15. Defendant James H. Lee has been a director of the Company since 2011.

16. Defendant Michael E. Rose has been a director of the Company since 2011.

17. Defendants Jennings, Myers, Ainsworth, Catalano, Echols, Fernandez, Knocke, Kostelnik, Lee, and Rose are collectively referred to herein as the "Board."

18. Nonparty Sinclair is a private company based in Salt Lake City, Utah. Sinclair is a vertically integrated oil company that is involved in the exploration, production, and refining of oil, as well as transporting and selling oil to consumers at Sinclair-branded gas stations.

**JURISDICTION AND VENUE**

19. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

20. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

21. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District. Additionally, HollyFrontier's common stock trades on the NYSE, which is headquartered in this District, making venue in this District appropriate.

**FURTHER SUBSTANTIVE ALLEGATIONS**

**A. Background of the Company and the Proposed Transaction**

22. HollyFrontier produces gasoline, diesel fuel, jet fuel, asphalt and specialty lubricated products. As of December 31, 2020, HollyFrontier owned five refineries and two facilities that were used to produce specialty lubricant products, and a facility that supplies locomotive engine oil.

23. On August 2, 2021, the Company entered into the Merger Agreement with Sinclair.

24. According to the press release issued on August 3, 2021 announcing the Proposed Transaction:

**HollyFrontier Corporation and Holly Energy Partners Announce Combination with Sinclair Oil and Formation of HF Sinclair Corporation**

- *Creates leading integrated downstream petroleum and renewable fuels company to be named HF Sinclair Corporation*

- *Provides growth to Holly Energy Partners through Sinclair's integrated crude and refined products midstream business*

- *HollyFrontier and HEP announce new plans for capital return to shareholders*

- *HollyFrontier and HEP to Host Investor Conference Call Today at 7:30 AM CT / 8:30 AM ET*

**DALLAS – August 3, 2021 –** HollyFrontier Corporation (NYSE: HFC) ("HollyFrontier") and Holly Energy Partners, L.P. (NYSE: HEP) ("HEP"), today announced they have entered into definitive agreements under which HollyFrontier and HEP will acquire Sinclair Oil Corporation and Sinclair Transportation Company from The Sinclair Companies ("Sinclair").

**HollyFrontier Transaction**

Under the terms of HollyFrontier's definitive agreement, HollyFrontier will acquire Sinclair's:

- **Branded marketing business** and all commercial activities, which build on an iconic brand with exceptional customer loyalty;

- **Renewable diesel business**, which made Sinclair a first-mover in the space; and

- Two premier **Rocky Mountain-based refineries**.

As part of the transaction, HollyFrontier will form a new parent company, named "HF Sinclair Corporation" ("HF Sinclair"), which will replace HollyFrontier as the public company trading on the NYSE. At the closing, existing shares of HollyFrontier will automatically convert on a one-for-one basis into shares of common stock of HF Sinclair, and HF Sinclair will issue approximately 60.2 million shares of common stock to Sinclair, representing 26.75% of the pro forma equity of HF Sinclair with a transaction value of approximately $1.8 billion based on HollyFrontier's fully diluted shares of common stock outstanding and closing stock price on July 30, 2021. HollyFrontier expects to seek the approval of its stockholders under applicable rules of the New York Stock Exchange for the issuance of the HF Sinclair shares to Sinclair.

5

The transaction will transform HollyFrontier by accelerating its growth while increasing scale and diversification; it also allows HollyFrontier to integrate downstream into branded wholesale distribution. HF Sinclair will drive incremental free cash flow growth through its expanded refining business, integrated distribution network, leading renewable diesel position and growing lubricants and specialties business. The transaction is expected to be accretive to HF Sinclair's earnings, cash flow and free cash flow within the first full year, and to enable the combined company to increase its commitment to return cash to stockholders.

Upon closing of the transaction, HollyFrontier's existing senior management team will operate the combined company. Under the definitive agreements, Sinclair will be granted the right to nominate two directors to the HF Sinclair Board of Directors at the closing. The Sinclair stockholders have also agreed to certain customary lock up, voting and standstill restrictions, as well as customary registration rights, for the HF Sinclair shares to be issued to the stockholders of Sinclair. The new company will be headquartered in Dallas, Texas, with combined business offices in Salt Lake City, Utah.

**HEP Transaction**

Under the terms of the HEP transaction, HEP will acquire Sinclair's integrated crude and refined products pipelines and terminal assets, including approximately 1,200 miles of pipelines, eight product terminals and two crude terminals with approximately 4.5 MMbbl of operated storage. In addition, HEP will acquire Sinclair's interests in three pipeline joint ventures including: Powder Flats Pipeline (32.5% non-operated interest), Pioneer Pipeline (49.9% non-operated interest) and UNEV Pipeline (25% non-operated interest; HEP operates the pipeline and owns the remaining 75% interest). The purchase price for the HEP transaction will consist of an equity issuance of 21 million HEP common units and the payment of $325 million of cash, subject to customary closing adjustments, representing a transaction value of approximately $758 million based on the closing price of HEP units on July 30, 2021. Upon closing of the HEP transaction, HEP's existing senior management team will continue to operate HEP. Under the definitive agreements, Sinclair will be granted the right to nominate one director to the HEP Board of Directors at the closing. The Sinclair stockholders have also agreed to certain customary lock up restrictions and registration rights for the HEP common units to be issued to the stockholders of Sinclair. HEP will continue to operate under the name Holly Energy Partners, L.P.

The transactions have been unanimously approved by both HollyFrontier's and HEP's Board of Directors and are expected to close in mid-2022, subject to customary closing conditions and regulatory clearance, including the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. In addition, the HFC transaction and the HEP transaction are cross-conditioned on each other.

"HollyFrontier was formed through a transformational merger that facilitated a decade of significant stockholder returns along with growth and diversification into lubricants and renewables. We believe these transactions with Sinclair represent a similar inflection point, marking the beginning of our next chapter as HF Sinclair," said Mike Jennings, Chief Executive Officer of HollyFrontier and HEP. "With this accretive transaction, we are adding an integrated marketing business with an iconic brand while building on the strength of our expanded refining network, increasing our scale and accelerating the growth of our renewables business. Together, with Sinclair and the dedicated employees who make it successful, we will be positioned to further build this business, capture synergies, and generate cash that will facilitate both capital return to stockholders and further investment in the business."

Mr. Jennings continued, "At the same time, this transaction will significantly extend the reach of HEP. Strengthened by an integrated network of Sinclair pipelines and storage facilities, HEP will have the scale and incremental earnings power to capture new organic growth opportunities and increase cash returns to unitholders."

Ross Matthews, Chairman and Chief Executive Officer of Sinclair commented, "As the oil and gas industry has evolved in recent years, we have carefully considered how best to position Sinclair's refinery and logistics assets and their related operations for the future. We're confident these businesses—and the dedicated employees who operate them—will continue to thrive under this new ownership structure. We expect these businesses will benefit significantly from HollyFrontier's and HEP's operational expertise, their network of refineries and midstream assets in the Western U.S., and the flexibilities that come with being part of a larger organization. Sinclair's employees bring a wealth of talent and capability, including in the production of renewable diesel, which will be an important and growing line of business for HF Sinclair. Sinclair also adds to HF Sinclair an outstanding and extremely successful brand marketing team. The transaction will help accelerate the ongoing rapid expansion of our Sinclair branded retail sites and the iconic DINO brand."

"We also believe that HollyFrontier and HEP are an excellent cultural fit, with a shared commitment to integrity and respect for our employees, our communities and the environment," Mr. Matthews explained. "We anticipate a seamless transition for our employees, distributors and other stakeholders following the closing of the transactions."

**Strategic and Financial Benefits**

HollyFrontier's acquisition of Sinclair's branded marketing business, refineries and its renewable diesel business is expected to:

- **Diversify HollyFrontier's Business with the Addition of Sinclair's Iconic Brand and Integrated Distribution Network.** By adding a branded wholesale business, the combined company will have the opportunity to grow an iconic brand across a range of HollyFrontier products and geographies. HollyFrontier will add a footprint of over 300 distributors and 1,500 branded locations across 30 states, with over 2 billion gallons of annual branded fuel sales.

- **Increase the Size and Scale of HollyFrontier's Renewables Business.** Sinclair's renewable diesel unit ("RDU"), co-located at its Sinclair, Wyoming refinery, processes soybean oil and tallow into renewable diesel that is sold into California. The RDU has recently been expanded to produce 10,000 barrels per day and Sinclair is currently in the process of constructing a pre-treatment unit, allowing for further feedstock advantage and flexibility. Once the transaction is complete, the combined renewables business is expected to produce approximately 380 million gallons of renewable diesel per year and will be a leading renewable diesel producer in the U.S. with the size and scale to support logistical, procurement, feedstock and operational synergies.

- **Add Complementary Rocky Mountain Refineries to HollyFrontier's Network**. The Sinclair and Casper Refineries are complementary to HollyFrontier's existing refinery network and will expand the combined company's footprint in the Rocky Mountain region. Like HollyFrontier's existing refineries, the Sinclair refineries are feedstock advantaged, given their Northern Tier access to Canadian and Rocky Mountain crudes.

    The combined refining network will feature seven complex refineries in the Rocky Mountains, Mid-Continent, Southwest and Pacific Northwest regions and will have a combined crude oil processing capacity of 678,000 barrels per stream day. Each refinery has the complexity to convert crude oils into a high percentage of gasoline, diesel and other high-value refined products.

- **Deliver Financial Benefits Through Accretion and Cost Savings**. The transaction is expected to be accretive to HF Sinclair's earnings, cash flow and free cash flow within the first full year. The transaction is expected to generate $100 million in run-rate synergies, as well as another $100-200 million in one-time savings during the first two years post close through working capital optimization.

- **Enable the Combined Company to Generate Significant Free Cash Flow, Maintain Strong Balance Sheet and Facilitate the Return of Capital to Stockholders.** HollyFrontier's credit profile is expected to be enhanced through reduced leverage, increased scale and diversification of businesses. We expect the combined company to maintain a strong balance sheet and investment grade credit rating. Fueled by significant free cash flow generation, the combined company expects to return capital to stockholders through both dividends and share repurchases.

- **Deepen HollyFrontier's and Sinclair's Commitment to ESG and Sustainability.** HollyFrontier and Sinclair share a common philosophy on commitments to environmental stewardship, sustainability and strong corporate governance. The combined business will build on each company's ongoing ESG efforts with increased renewables scale, a shared commitment to health and safety practices that best serve employees and communities, and a focus on risk management.

HEP's acquisition of Sinclair's integrated crude and refined product pipeline and terminal assets, including interests in three midstream joint ventures, is expected to:

- **Expand HEP's Scale and Earnings.** HEP's acquisition of Sinclair's expansive network of crude and product assets provides an integrated system with connectivity to key crude hubs in the Rockies, including Casper, Guernsey and Cheyenne. The acquired assets are expected to produce stable revenues supported by long-term minimum volume commitments from HF Sinclair.

- **Extend HEP's Access to Growing Geographies through Finished Product Pipelines and Storage through Additional Joint Ventures.** The assets in the acquired joint ventures serve multiple regions and are strategically located to meet increasing demand for finished product pipelines and storage.

**Financial Targets and New Plan to Return Capital**

HF Sinclair will focus on maintaining its investment grade balance sheet and delivering significant free cash flow while utilizing a balanced approach to capital investment and cash return to stockholders. As part of its commitment to cash return, HF Sinclair intends to focus on the following strategy:

- **Near-term**: Reinstate the regular dividend of $0.35/share no later than the second quarter of 2022.

- **Mid-term (next 18 months)**: Return $1 billion of cash to stockholders through regular dividends and share repurchases by the first quarter of 2023.

- **Long-term (2023 and beyond)**: Implement a target payout ratio of 50% of adjusted net income in the form of regular dividends and share repurchases.

HEP's acquisition of Sinclair's logistics assets is expected to provide enhanced earnings power, allowing for further deleveraging and incremental cash return to unitholders. For its commitment to cash return, HEP intends to incorporate the following strategy:

- **Near-term:** Continue to reduce leverage while paying a quarterly distribution of $0.35/unit.

- **Mid-term (next 18 months):** Reduce leverage ratio to 3.5 times EBITDA while targeting a distribution coverage ratio of 1.5 times. HEP also expects to increase its quarterly distribution with the option of repurchasing units with excess free cash flow.

- **Long-term (2023 and beyond):** Maintain leverage ratio below 3.0 times EBITDA while targeting a distribution coverage ratio of 1.3 times. HEP expects to continue increasing the quarterly distribution with the option of repurchasing units with excess free cash flow.

B. **The Materially Incomplete and Misleading Proxy**

25.     On September 17, 2021, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Stock Issuance. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Stock Issuance.

   *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

26.     The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of

10

Citigroup's fairness opinion, Citigroup reviewed "certain financial forecasts and other information and data relating to the Sinclair Downstream Business and HollyFrontier prepared by the management of HollyFrontier . . ." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that HollyFrontier's management provided to the Board and Citigroup.

27. Notably, for the HollyFrontier forecasts, the Proxy fails to disclose the line items underlying the calculation of Consolidated Adjusted EBITDA, Adjusted Net Income Attributable to HollyFrontier Stockholders, and Deconsolidated Cash Flow from Operations. For the Sinclair NewCo forecasts, the Proxy fails to disclose the line items underlying Consolidated Adjusted EBITDA and Deconsolidated Cash Flow from Operations. For the Combined Company Pro Forma forecasts, the Proxy fails to disclose the line items underlying the calculation of Consolidated Adjusted EBITDA, Adjusted Net Income Attributable to HollyFrontier Stockholders, and Deconsolidated Cash Flow from Operations. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Stock Issuance.

### *Materially Incomplete and Misleading Disclosures Concerning Citigroup's Financial Analyses*

28. With respect to the *Selected Companies Analysis—Sinclair Downstream Consolidated,* the Proxy fails to disclose the multiples for 2022E Adjusted EBITDA, 2023E Adjusted EBITDA, 2022E Adjusted Operating Cash Flow, and 2023E Adjusted Operating Cash Flow for each company selected.

29. With respect to the *Selected Companies Analysis—Sinclair Downstream Sum-of-the-Parts*, the Proxy fails to disclose the multiples for 2022 Adjusted EBITDA and 2023E Adjusted EBITDA for each company selected.

30. With respect to the *Selected Precedent Transactions Analysis—Sinclair Downstream*, the Proxy fails to disclose the transaction values for each of the selected transactions. The Proxy also fails to disclose the multiples for NTM Adjusted EBITDA for each transaction selected for the analysis.

31. With respect to the *Discounted Cash Flow Analysis—Sinclair Downstream*, the Proxy fails to disclose the terminal values calculated by Citigroup. The Proxy also fails to disclose the inputs and assumptions underlying the discount rates of 8.3% to 9.3%. The Proxy further fails to disclose the standalone unlevered, after-tax free cash flows for the Sinclair Downstream Business for the years ending December 31, 2022 through December 31, 2025. In addition, the Proxy fails to disclose the 2025 estimated adjusted EBITDA of the Sinclair Downstream Business.

32. With respect to the *Selected Companies Analysis—Holly Frontier Consolidated*, the Proxy fails to disclose the multiples for 2022E Adjusted EBITDA, 2023E Adjusted EBITDA, 2022E Cash Flow per Share, and 2023E Cash Flow per Share for each selected company.

33. With respect to the *Selected Companies Analysis—HollyFrontier Sum-of-the-Parts*, the Proxy fails to disclose the multiples for 2022E Adjusted EBITDA and 2023E Adjusted EBITDA for each selected company.

34. With respect to the *Discounted Cash Flow Analysis—Holly Frontier*, the Proxy fails to disclose the terminal values for HollyFrontier. The Proxy also fails to disclose the inputs and assumptions for the discount rates of 8.2% to 9.2%. In addition, the Proxy fails to disclose the unlevered, after-tax free cash flows for HollyFrontier for the years ending December 31, 2022 through December 31, 2025.

35. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Stock Issuance and the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

36. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

37. Further, the Proxy indicates that on August 1, 2021, Citigroup reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view to HollyFrontier stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Citigroup's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

38. Plaintiff is immediately threatened by the wrongs complained of herein and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. Defendants have filed the Proxy with the SEC with the intention of soliciting HollyFrontier stockholder support for the Stock Issuance and the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

41. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of HollyFrontier, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

42. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

43. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; and (ii) the value of HollyFrontier shares and the financial analyses performed by Citigroup in support of its fairness opinion.

44. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Stock Issuance and the Proposed Transaction; indeed, the Proxy states that

Citigroup reviewed and discussed its financial analyses with the Board during various meetings including on August 1, 2021, and further states that the Board considered Citigroup's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

45. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Stock Issuance. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of HollyFrontier within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of HollyFrontier and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Stock Issuance. They were, thus, directly involved in the making of the Proxy.

50. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing a Definitive Proxy with the SEC or otherwise disseminating a Definitive Proxy to HollyFrontier stockholders unless and until Defendants agree to include the material information identified above in the Definitive Proxy;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Stock Issuance and/or the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 28, 2021                                 **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*